1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA L. D.,[1] <br><br>          Plaintiff, <br><br>    v. <br><br> MARTIN J. O'MALLEY,[2] <br> Commissioner of Social Security, <br><br>          Defendant. | No. 2:23-cv-07502-AJR <br><br> **MEMORANDUM DECISION AND ORDER** |

## I.

## INTRODUCTION

Erica L. D. ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of Social Security (the "Commissioner" or "Agency") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  The parties consented, pursuant to 28 U.S.C. § 636(c), to

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Commissioner Martin J. O'Malley is substituted in as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

the jurisdiction of the undersigned United States Magistrate Judge.  (Dkt. Nos. 6, 7, 8.)  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.
## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on November 2, 2018, and an application for DIB on November 5, 2018, alleging an inability to work since February 20, 2014.  (Dkt. 9-5 at 9; Dkt. 9-6 at 2.)  Plaintiff's applications were initially denied on October 24, 2019.  (Dkt. 9-4 at 2-9).  Plaintiff's applications for DIB and SSI were denied upon reconsideration on July 27, 2020, and July 28, 2020, respectively.  (Dkt. 9-4 at 10-45; Dkt. 9-5 at 15.)

Thereafter, Plaintiff filed a written request for hearing on August 14, 2020.  (Dkt. 9-5 at 20-26.)  On May 27, 2021, Administrative Law Judge Michael Radensky (the "ALJ") conducted a telephonic hearing.[3]  (Dkt. 9-3 at 71-96.)  The ALJ subsequently published an unfavorable decision on July 14, 2021.  (Dkt. 9-4 at 46-60.)  Plaintiff requested review of the ALJ's decision by the Appeals Council on September 10, 2021.  (Dkt. 9-5 at 101-103.)  The Appeals Council granted the request for review on August 31, 2022 and remanded the case back to the ALJ for a new hearing.  (Id. at 113-115.)

On February 13, 2023, on remand from the Appeals Council, the ALJ conducted another telephonic hearing.[4]  (Dkt. 9-3 at 44-70.)  The ALJ published an unfavorable decision on March 15, 2023.  (Id. at 18-31.)  Plaintiff again requested a review of the ALJ's decision by the Appeals Council on March 29, 2023.  (Dkt. 9-5

---

[3] Plaintiff was represented by counsel at the hearing and agreed to conduct the hearing telephonically because of the COVID-19 pandemic.  (Dkt. 9-3 at 73-74.)

[4] Plaintiff was once again represented by counsel at the hearing and agreed to conduct the hearing telephonically because of the COVID-19 pandemic.  (Dkt. 9-3 at 46-47.)

at 167-171.)  On July 31, 2023, the Appeals Council denied the request for review.  (Dkt. 9-3 at 2-7.)  On this date, the ALJ's decision became the final decision of the Commissioner.  See 42 U.S.C. § 405(h).  Plaintiff now seeks review of the ALJ's final decision.

## III.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)    Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)    Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)    Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)    Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)    Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets their burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## IV.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (Dkt. 9-3 at 20-31.)  At step one, the ALJ found that Plaintiff had not engaged in substantial

4

gainful activity since February 20, 2014, the alleged onset date.  (Id. at 20.)  At step two, the ALJ found that Plaintiff had the following severe impairments: "fibromyalgia, chronic fatigue syndrome, diabetes, mellitus, obesity, rheumatoid arthritis factor, sleep apnea, and headaches."  (Id. (bold omitted).)  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings in the regulations.  (Id. at 23-24.)

The ALJ assessed Plaintiff's residual functioning capacity ("RFC") and concluded that she could perform light work as defined in 20 C.F.R. § 404.1567(a), "except with the following limitations: stand and walk for four hours out of eight; perform occasional postural activities; no climbing ladders, scaffolds, or ropes; avoid concentrated exposure to extremes of temperature; no work around unprotected heights or dangerous, moving machinery."  (Id. at 24 (bold omitted).)  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  (Id. at 26.)

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a claims assistant.  (Id. at 29.)  The ALJ found that this work did not require the performance of work-related activities precluded by Plaintiff's RFC.  (Id.)  Accordingly, the ALJ found that Plaintiff had not been under a disability as defined by the Act from February 20, 2014, through the date of the decision.  (Id. at 30.)

## V.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's

decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  <u>Garrison v. Colvin</u>, 759 F.3d 995 (9th Cir. 2014) (citing <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1052 (9th Cir. 2006)); <u>Auckland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing <u>Tackett</u>, 180 F.3d at 1097); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." <u>Reddick</u>, 157 F.3d at 720 (citing <u>Jamerson v. Chater</u>, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  <u>Id.</u> (citing <u>Jamerson</u>, 112 F.3d at 1066; <u>Smolen</u>, 80 F.3d at 1279).  To determine whether substantial evidence supports a finding, the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion."  <u>Auckland</u>, 257 F.3d at 1035 (citing <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  <u>Reddick</u>, 157 F.3d at 720-21 (citing <u>Flaten v. Sec'y</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VI.

## DISCUSSION

Plaintiff raises two grounds for relief, both focused on the ALJ's alleged improper assessment of evidence.  First, Plaintiff contends that the ALJ failed to properly assess the opinion of Dr. Shelia Lezcano.  (Dkt. 11 at 5-12.)  Second, Plaintiff contends that the ALJ failed to properly address Plaintiff's subjective symptom testimony by failing to provide "clear and convincing reasons" to reject the testimony.  (<u>Id.</u> at 12-16.)  For the reasons set for the below, the Court affirms

the decision of the Commissioner.

**A.** **The ALJ Properly Considered the Opinions of Treating Specialist Dr. Shelia Lezcano.**

In her first ground for relief, Plaintiff contends that the ALJ failed to properly assess the opinion of Dr. Lezcano who provided "long term treatment" for Plaintiff. (Dkt. 11 at 5.) Specifically, Plaintiff contends that the ALJ improperly disqualified Dr. Lezcano's assessment due to a lack of expertise in mental health regarding Plaintiff's "limitations in the ability to concentrate." (Id. at 8-9.) Plaintiff further contends that Dr. Lezcano's opinion about Plaintiff's inability to concentrate is consistent with the opinion of Dr. Richard Ciasca, Plaintiff's psychiatrist. (Id. at 9.) Plaintiff argues that the ALJ wrongly rejected Dr. Lezcano's opinion due to a lack of objective findings "that are not expected" in a case involving fibromyalgia and chronic fatigue syndrome. (Id. at 10.) Finally, Plaintiff argues that the ALJ erred in rejecting Dr. Lezcano's opinion because as a rheumatologist, she was in the best position to evaluate Plaintiff's "complex condition." (Id. at 11-12.)

In response, Defendant contends that the ALJ properly resolved conflicts in the medical opinion evidence and found the State agency physicians to be more persuasive than Dr. Lezcano. (Dkt. 14 at 13.) Defendant argues that the inconsistency of Dr. Lezcano's opinion with the overall record and reliance on "Plaintiff's subjective symptoms" justified the ALJ's discounting of Dr. Lezcano's opinion. (Id. at 13.) Defendant also contends that the ALJ reasonably resolved conflicts in the opinion evidence about Plaintiff's ability to concentrate because Dr. Ciasca's findings lacked objective support. (Id. at 14.)

**1.** **Legal Standard.**

An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings. See 20 C.F.R. § 416.920c(b). The factors for evaluating the persuasiveness of medical opinions and prior

administrative medical findings include:  supportability, consistency, relationship with claimant (including length of the treatment, frequency of the examinations, purpose of the treatment, extent of the treatment relationship, and examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Agency's] disability program's policies and evidentiary requirements").  20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors; therefore, the ALJ is required to explain how both factors were considered.  20 C.F.R. § 416.920(c)(2).  Supportability and consistency are explained as follows:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ is allowed to, but is not required to, explain how "the factors in paragraphs (c)(3) through (c)(5)," *i.e.*, "[r]elationship with the claimant," "[s]pecialization," and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," were considered.  20 C.F.R. § 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same,"

8

the ALJ must explain how "the other most persuasive factors" were considered.  20 C.F.R. § 416.920c(b)(3).

Finally, in formulating an RFC, the ALJ weighs medical opinions, non-medical source opinions, and the claimant's credibility.  See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226 (9th Cir. 2009); see also Robbins, 466 F.3d at 883 ("In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributable to a medically determinable impairment." (internal quotation marks omitted)); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."); 20 C.F.R. § 416.945(a)(3) ("We will assess your [RFC] based on all of the relevant medical and other evidence. . . .  We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations.").

An ALJ must discuss significant and probative evidence and explain why it has been rejected.  See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).  An ALJ may not make proprietary determinations regarding the claimant's medical evidence.  See, e.g., Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); Javier A. G. v. Saul, 2020 WL 6940042, at *9 (C.D. Cal. Nov. 25, 2020) ("[A]n ALJ may not substitute his or her lay interpretation of raw medical data in making an RFC assessment in lieu of a qualified expert's medical opinion.").

1

### 2.    Dr. Lezcano's Opinion.

Dr. Lezcano is a rheumatologist at Adventist Health White Memorial Hospital who treated Plaintiff for over two years as of February, 21, 2022.  (Dkt. 9-14 at 203-06; Dkt. 9-10 at 155, 198, 210.)  Dr. Lezcano completed a Fibromyalgia Residual Functional Capacity Assessment on November 30, 2020 and a Physical Medical Source Statement on February 21, 2022.  (See Dkt. 9-10 at 100-03; Dkt. 9-14 at 203-05.)

The assessment completed on November 30, 2020 was a mostly check-the-box form with some additional space for written comments.  (Dkt. 9-10 at 100-03.)  At the top of the form, Dr. Lezcano checked a box indicating that Plaintiff met the criteria for a fibromyalgia diagnosis and described Plaintiff's prognosis as "guarded, chronic."  (Id.)

Dr. Lezcano checked boxes indicating that Plaintiff suffered from the following symptoms: multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, frequent, severe headaches, temporomandibular joint dysfunction ("TMJ"), numbness and tingling, sicca symptoms, anxiety, depression, and chronic fatigue syndrome.  (Id.)  Dr. Lezcano also checked boxes indicating that Plaintiff was not a malingerer and that emotional factors contributed to the severity of Plaintiff's pain.  (Id.)  Dr. Lezcano opined that Plaintiff suffered from "constant, burning pain that [could] vary in intensity."  (Id. at 101.)

With regard to Plaintiff's ability to work, Dr. Lezcano checked a box indicating that Plaintiff would frequently experience pain or other symptoms that interfered with Plaintiff's attention and concentration to perform even simple work tasks.  (Id.)  Dr. Lezcano also checked a box indicating that Plaintiff was incapable of even low stress jobs.  (Id.)  With regard to Plaintiff's functional limitations, Dr. Lezcano estimated that Plaintiff could walk two city blocks without rest or severe

10

pain, sit for thirty minutes at a time before needing to get up, and stand for five minutes at a time before needing to sit down.  (Id. at 101-02.)  Dr. Lezcano also estimated that Plaintiff could sit for two hours and stand/walk for less than two hours during an eight-hour workday.  (Id. at 102.)  Dr. Lezcano further estimated that Plaintiff would need to walk around for five minutes, every thirty minutes, during the course of an eight-hour workday.  (Id.)  Dr. Lezcano concluded the assessment by checking a box indicating that Plaintiff was likely to be absent from work more than four days per month due to impairments or treatments.  (Id. at 103.)

In the form completed on February 2, 2022, Dr. Lezcano diagnosed Plaintiff with "seropositive rheumatoid arthritis [and] fibromyalgia."  (Dkt. 9-14 at 203.)  Dr. Lezcano opined that Plaintiff exhibited "chronic diffuse body pain, generalized joint, excessive fatigue" and identified "diffuse tender[ness]" as an objective sign of Plaintiff's condition.  (Id.)  With regard to Plaintiff's functional limitations, Dr. Lezcano estimated that Plaintiff could not walk a city block without rest or severe pain and could sit for 20 minutes before needing to get up.  (Id.)  Dr. Lezcano checked boxes indicating that Plaintiff could sit and stand/walk for less than two hours total in an eight-hour workday.  (Id.)  Dr. Lezcano also estimated that Plaintiff required ten-to-fifteen-minute unscheduled breaks every hour during an eight-hour workday.  (Id. at 204.)

Dr. Lezcano checked boxes indicating that Plaintiff should rarely lift items less than ten pounds and never lift anything more than ten pounds in a competitive work environment.  (Id.)  Dr. Lezcano concluded the form by checking a box estimating that Plaintiff was likely to miss more than four days per month due to her impairments and opined that "excessive fatigue, poor concentration, [and] severe chronic pain" would affect Plaintiff's ability to work.  (Id. at 205.)

### 3.    Analysis.

The ALJ addressed Dr. Lezcano's opinions and ultimately found them to be

"unpersuasive." (Dkt. 9-3 at 28.)  The ALJ articulated the two most important factors of supportability and consistency to consider the persuasiveness of Dr. Lezcano's opinions.  See 20 C.F.R. § 416.920c(c)(1)-(2).  With regard to supportability, the ALJ found that Dr. Lezcano's opinions were "not well supported" because they contained "subjective complaints of symptoms as well as indications of tender points but limited other objective evidence that would limit [Plaintiff] so much that she could not lift more than 10 pounds on the rare occasion among other limitations." (Dkt. 9-3 at 28.)  The ALJ explained that Dr. Lezcano's opinions contained "few objective clinical findings such as muscle weakness, atrophy, imbalance, loss of range of motion, or other such findings." (Id.)  The ALJ also noted that Dr. Lezcano's opinions contained "limitations concerning [Plaintiff's] mental health, which appear[ed] to be beyond the scope of [Dr. Lezcano's] area of expertise." (Id.)

With regard to consistency, the ALJ found that Dr. Lezcano's opinions were "not consistent with other evidence in the record." (Id.)  Specifically, the ALJ explained that "[m]ost physical examinations indicate[d] no acute distress; no joint deformity, erythema, or tenderness; full range of motion in all joints; and normal sensation and motor functioning." (Id. (citing Dkt. 9-10 at 26, 32-33, 38, 110, 116, 156, 192, 201, 206).)  The ALJ noted that Plaintiff "also has a normal gait." (Id. (citing Dkt. 9-10 at 192, 201).)  The ALJ further noted that "[t]here is not consistent evidence of swelling in the hands or other joints" and "no evidence of muscle weakness or inability to perform fine or gross movements." (Id.)  The ALJ explained that "[t]he most recent treatment notes [we]re not specifically for chronic fatigue syndrome, which [Plaintiff] allege[d] [wa]s her primary condition, but rather fibromyalgia and rheumatoid arthritis." (Id. (citing Dkt. 9-4 at 66, 67; Dkt. 9-13 at 2-198; Dkt. 9-14 at 2-200).)  Additionally, the ALJ noted that Dr. Lezcano's limitations concerning Plaintiff's mental health were "not consistent with the

1  objective clinical findings made during mental status examinations."  (Id. (citing

2  Dkt. 9-10 at 92; 9-11 at 7, 10, 13, 23, 46, 48).)

3       The ALJ explained that he "limited [Plaintiff] to less than light exertional

4  work with only four hours of standing and walking in considering [Plaintiff's]

5  subjective complaints, despite the objective clinical evidence showing no significant

6  motor weakness, muscle atrophy, shortness of breath, or swelling on a consistent

7  basis."  (Id. at 28-29.)  The ALJ further explained that Plaintiff "also does not

8  appear to have consistent findings of ataxia, extreme pallor, pronounced weight

9  change, or swollen lymph nodes typically associated with chronic fatigue

10  syndrome."  (Id. at 29.)  "Nevertheless, given the consistent complaints of fatigue

11  and pain, [the ALJ] . . . limited [Plaintiff] to light work with reduced walking and

12  occasional postural activities."  (Id.)

13       The Court concludes that the ALJ's findings related to supportability are

14  supported by substantial evidence in the record, with one exception which was

15  harmless error.  Specifically, the ALJ is correct that the two assessments provided

16  by Dr. Lezcano are largely check-the-box forms with very little explanation or

17  objective clinical findings.  (See Dkt. 9-10 at 100-03; Dkt. 9-14 at 203-05.)

18  Moreover, the two assessments appear to largely summarize and be based upon

19  Plaintiff's subjective complaints, which were properly discounted by the ALJ, as

20  discussed in the context of Plaintiff's second ground for relief below.  (See Dkt. 9-

21  10 at 100; Dkt. 9-14 at 205); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.

22  2008) ("An ALJ may reject a treating physician's opinion if it is based to a large

23  extent on a claimant's self-reports that have been properly discounted as incredible."

24  (internal quotation marks omitted)); Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th

25  Cir. 2014) ("If a treating provider's opinions are based to a large extent on an

26  applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant

27  not credible, the ALJ may discount the treating provider's opinion." (internal

28

1  quotation marks omitted).).

2      Finally, the ALJ noted that Dr. Lezcano included limitations concerning

3  Plaintiff's mental health in her opinions and these limitations appeared to be beyond

4  the scope of Dr. Lezcano's expertise.  (Dkt. 9-3 at 28).  This was improper because

5  the Ninth Circuit has held that a treating physician can opine on a claimant's mental

6  limitations regardless of whether they have any certification in mental health.  See,

7  e.g., Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) ("Under general

8  principles of evidence law Dr. Gehlen is qualified to give a medical opinion as to

9  Mrs. Sprague's mental state as it relates to her physical disability even though Dr.

10  Gehlen is not a psychiatrist.").  However, the ALJ's erroneous rejection of Dr.

11  Lezcano's mental limitations as beyond the scope of her expertise was harmless.

12  See Tommasetti, 533 F.3d at 1038 ("[T]he court will not reverse an ALJ's decision

13  for harmless error, which exists when it is clear from the record that the ALJ's error

14  was inconsequential to the ultimate nondisability determination." (internal quotation

15  marks omitted)).  The error was harmless because Dr. Lezcano did not make any

16  significant finding related to Plaintiff's mental capacity and therefore the mental

17  limitations did not impact the RFC determination.  Indeed, Plaintiff admits that "[i]t

18  is not clear what the ALJ is referring to in regards to the mental health opinion of

19  Dr. Lezcano, however, Dr. Lezcano did note that [Plaintiff] had poor concentration

20  and was incapable of even low stress jobs."  (Dkt. 11 at 8-9.)  The error was also

21  harmless because the ALJ rejected these mental health limitations as inconsistent

22  with the objective clinical findings made during mental status examinations, as

23  discussed below.  (Dkt. 9-3 at 28 (citing Dkt. 9-10 at 92; Dkt. 9-11 at 7, 10, 13, 23,

24  36, 48).)

25      The Court similarly also concludes that the ALJ's findings related to

26  consistency are supported by substantial evidence in the record.  Specifically, the

27  ALJ is correct that the mental limitations assessed by Dr. Lezcano are inconsistent

28

with the objective clinical findings made during mental status examinations.  (Dkt. 9-3 at 28 (citing Dkt. 9-10 at 92; Dkt. 9-11 at 7, 10, 13, 23, 36, 48).)  For example, Dr. Ciasca found no abnormalities during mental status examinations on February 27, 2020, May 28, 2020, July 13, 2020, August 28, 2020, and November 21, 2020. (Dkt. 9-10 at 92-93; Dkt. 9-11 at 7-8, 10-11, 13-14, 23-24, 36-37, 48-49.) Moreover, the ALJ noted that Plaintiff's treatment records "indicate calm demeanor; good mood; euthymic affect; linear thought process; no psychosis; intact cognition; and good insight and judgment."  (Dkt. 9-3 at 23 (citing Dkt. 9-10 at 86, 92; Dkt. 9-11 at 7, 10, 13, 23, 36, 48).)  The ALJ also noted that Plaintiff's "treatment history is not consistent with marked to extreme findings" because Plaintiff "receives medication, which she reports is beneficial, but is not receiving any therapy."  (Dkt. 9-3 at 23 (citing Dkt. 9-15 at 4)); see Warre v. Comm'r of the Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").[5]

Plaintiff contends that the ALJ demonstrated a misunderstanding of fibromyalgia and chronic fatigue syndrome by requiring objective findings that are not expected with these diagnoses.  (Dkt. 11 at 10.)  However, the ALJ did not require objective findings to support all the limitations included in Dr. Lezcano's opinions.  To the contrary, the ALJ incorporated many of Dr. Lezcano's limitations related to Plaintiff's "complaints of fatigue and pain" into the RFC determination by limiting Plaintiff "to light work with reduced walking and occasional postural activities."  (Dkt. 9-3 at 29.)  Thus, the ALJ properly relied on objective medical evidence as "a useful indicator to help make reasonable conclusions about the

_____

[5] Plaintiff notes that Dr. Lezcano's opinion regarding Plaintiff's ability to concentrate is consistent with Dr. Ciasca's opinion.  (Dkt. 11 at 9.)  However, the ALJ thoroughly discussed the inconsistency of Dr. Ciasca's findings by explaining that Dr. Ciasca's opinion is not supported by objective clinical findings and conflicts with other neurological reports in the record.  (Dkt. 9-3 at 23.)

1    intensity and persistence of symptoms."  Social Security Ruling ("SSR") 16-3p,

2    2017 WL 5180304, at *5.

3           Finally, Plaintiff contends that the ALJ erred in rejecting Dr. Lezcano's

4    opinions because as a rheumatologist, she was in the best position to evaluate

5    Plaintiff's condition.  (Dkt. 11 at 11-12.)  However, the ALJ's rejection of the more

6    extreme limitations included in Dr. Lezcano's opinions is supported by substantial

7    evidence in the record, including the key factor of consistency.  Indeed, the ALJ is

8    correct that Dr. Lezcano's opinions are not consistent with most of the physical

9    examinations in the record indicating "no acute distress; no joint deformity,

10   erythema, or tenderness; full range of motion in all joints; and normal sensation and

11   motor functioning."  (Dkt. 9-3 at 28 (citing Dkt. 9-10 at 23, 26, 32-33, 38, 110, 116,

12   156, 192, 201, 206).)  For example, Dr. Susan Dasta documented in multiple

13   examination notes that Plaintiff had "[n]o joint deformity" and possessed "full

14   [range of motion in] all joints."  (Dkt. 9-10 at 23, 32, 38, 110.)  Similarly, Dr.

15   Amaiak Chilingaryan documented in multiple examination notes that Plaintiff's

16   "strength [was] 5/5 in all major muscle groups" and "rapid alternating movements

17   [were] intact."  (Dkt. 9-10 at 192, 201, 206.)  Dr. Chilingaryan also documented in

18   physical examination notes that Plaintiff had a normal gait.  (Dkt. 9-10 at 192, 201.)

19          Thus, the Court concludes that the ALJ properly considered the opinions of

20   Dr. Lezcano by focusing on the two most important factors of supportability and

21   consistency.  See 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability . . .

22   and consistency . . . are the most important factors we consider when we determine

23   how persuasive we find a medical source's medical opinions or prior administrative

24   medical findings to be.").  Given both the lack of support for Dr. Lezcano's opinions

25   as well as the substantial number of opinions in the record contradicting Dr.

26   Lezcano, the Court concludes that the ALJ properly rejected Dr. Lezcano's

27   opinions.

28

**B.      The ALJ Properly Considered Plaintiff's Subjective Symptom Testimony.**

In her second ground for relief, Plaintiff contends that the ALJ failed to provide clear and convincing reasons to reject her subjective complaints.  (Dkt. 11 at 12.)  Plaintiff argues that the ALJ misunderstood the treatment for chronic fatigue syndrome and emphasizes that the treatment is "rest, pacing, and minimizing activities."  (Id. at 14.)  Plaintiff also asserts two reasons why the ALJ did not provide clear and convincing reasons to reject the frequency of Plaintiff's headaches.  (Id. at 15.)  First, Plaintiff contends that the ALJ failed to cite to the record to support a conclusion that Plaintiff's testimony about migraines was inconsistent with treatment notes.  (Id.)  Second, Plaintiff contends that the treatment notes accurately reflect her testimony that she suffers from migraines once a week.  (Id.)  Finally, Plaintiff argues that the record supports a finding that she cannot work on a sustained basis due to limitations from migraines, chronic fatigue syndrome, fibromyalgia, and rheumatoid arthritis.  (Id.)

**1.      Legal Standard.**

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis.  See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017).  First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged.  See Garrison, 759 F.3d at 1014.  "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Id. (emphasis in original) (citation omitted).  "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."  Id. (internal quotation marks omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the

17

claimant's testimony about the symptom severity.  See Trevizo, 871 F.3d at 678; see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim, 763 F.3d at 1163 (internal quotation marks omitted).  Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant.  See Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms.  See Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137.  However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented.  Bray, 554 F.3d at 1227 (internal quotation marks omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  Tommasetti, 533 F.3d at 1039 (internal quotation

marks omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." (internal quotation marks omitted)).  Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

> **2.  Plaintiff's Subjective Symptom Testimony.**

At the hearing, Plaintiff testified that she is not currently working and last worked in 2014 as a clerical assistant for an insurance company.  (Dkt. 9-3 at 48.) Plaintiff testified that she worked for "about seven months" before being laid off. (Id. at 49.)  Plaintiff explained that after being laid off, she tried working as a notary, but "didn't have the energy" to stay in the job.  (Id.)  Plaintiff also confirmed that she does not use alcohol or drugs and has no difficulty reading or writing.  (Id. at 50.)

When examined by her attorney, Plaintiff testified that she worked part time in her clerical assistant role because she "didn't have the energy to work full time." (Id.)  Before working as a clerical assistant, Plaintiff attended school and supported herself through "couch surfing, [general relief], and food stamps."  (Id. at 51.) Plaintiff testified that she did not work while going to school because she "didn't have the energy."  (Id.)  Plaintiff testified that she experienced a period of feeling better when she worked as a clerical assistant but "pay[s] for it even longer" when she pushes herself to work.  (Id.)  Plaintiff clarified that "pay[ing] for it" means she ends up in bed "constantly" and only gets up to use the bathroom and eat.  (Id.)

Plaintiff testified further that she struggles to walk a "full block," but attempts to "do basic stuff" to get exercise.  (Id. at 52.)  Plaintiff explained that she does "go

to the market," but does not have the energy to clean her house.  (Id.)  Plaintiff experiences knee pain, but does not wear a brace and "occasionally" elevates her leg to alleviate swelling.  (Id. at 53.)  Plaintiff cannot stand for long without holding something for support.  (Id.)  Plaintiff explained that standing for "too long" causes swelling, she can "maybe [walk] two blocks" before stopping to rest, and her ability to walk after resting depends on whether she is having a "good day."  (Id.)  Plaintiff estimated that she experiences one or two "good days" a month.  (Id. at 54.)  Plaintiff experiences "one or two" migraines per week and is prescribed medication to address her migraines.  (Id.)

Plaintiff testified that she can drive and resides with a roommate, but lives in her own room.  (Id.)  Plaintiff does her own laundry and cooks for herself but must wait until it is a "good day" to do laundry and eats mostly cold food, sandwiches, and microwavable meals.  (Id. at 60.)  Plaintiff testified that she tries to attend church weekly, but does not "hang out" before or after services.  (Id.)  Plaintiff is diagnosed with sleep apnea and uses a continuous positive airway pressure ("CPAP") machine to deal with the condition.  (Id. at 55.)  As far as medications, Plaintiff takes Pravadoline (painkiller), Cyclobenzaprine (muscle relaxer), Sertaline (mental health), Sumatriptan (migraine medication), Topiramate (migraine medication), and Humira (rheumatoid arthritis medication).  (Id. 55-56, 59, 61.)  Plaintiff testified that her "biggest problem" is fatigue, but she also experiences pain from her rheumatoid arthritis.  (Id. at 57, 59.)  Specifically, Plaintiff testified that due to her rheumatoid arthritis, she sometimes struggles to bend her fingers, but her condition has improved over time.  (Id. at 60.)

### 3.    Analysis.

The ALJ engaged in the two-step analysis required by Trevizo and found at the first step that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (Dkt. 9-3 at 26.)  However, the ALJ

concluded at the second step that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Id.)  Additionally, the ALJ did not make a finding of malingering, but noted that Plaintiff's "primary care physician has 'doubted [the] diagnosis of chronic fatigue syndrome.'" (Id. (quoting Dkt. 9-9 at 436).)  The ALJ rejected portions of Plaintiff's subjective symptom testimony by relying on inconsistencies between Plaintiff's testimony and her behavior, inconsistencies with the medical evidence in the record, and inconsistencies between Plaintiff's testimony and her activities of daily living. (Id. at 26-29.)

First, the ALJ noted Plaintiff's contradictory behavior towards her prescribed medications from 2018 to 2023. (Id. at 26-27.)  Specifically, the ALJ highlighted that in 2018, Plaintiff reported being prescribed medication to treat her fibromyalgia pain, but "had not consistently been on any medication for more than a few weeks." (Id. at 26 (citing Dkt. 9-9 at 469)); Dkt. 9-9 at 469 ("She has not taken anything to help with the pain.  She was previously prescribed medication, the name of which she doesn't remember, to treat fibromyalgia pain.  She never took medication for more than a few weeks.").)  The ALJ also noted that in 2019, Plaintiff was prescribed Lyrica and Humira, but "delayed starting her medication despite her treatment provider encouraging her to start this treatment." (Dkt. 9-3 at 26 (citing Dkt. 9-10 at 56; Dkt. 9-13 at 195; Dkt. 9-14 at 197).)  The treatment records from December of 2019 indicate a concern by Plaintiff about side effects because of a foot surgery she is going to have "soon" and concern that the medication will depress her immune system. (Dkt. 9-10 at 56.)  However, the treatment records in August of 2021 continue to show that Plaintiff has not started Humira and that Plaintiff "prefers to hold off on use of Humira at this time," despite the urging of Dr. Lezcano. (Dkt. 9-13 at 195; Dkt. 9-14 at 197.)  Moreover, the ALJ noted that

Plaintiff only recently started Humira and "reported in January 2023 that it seemed to be working" without "adverse side effects reported on a consistent basis." (Dkt. 9-3 at 26-27 (citing Dkt. 9-15 at 34).)

The Court concludes that the ALJ properly discounted Plaintiff's subjective symptom testimony of disabling pain based on evidence that she did not consistently take her prescribed medication and delayed taking medication which was ultimately effective. See Orn v. Astrue, 495 F.3d 625, 638 ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such a failure as a basis for finding the complaint unjustified or exaggerated."); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination."). The fact that Plaintiff expressed concern in December of 2019 about side effects interfering with a foot surgery she was going to have "soon" does not justify delays in taking Humira through August of 2021. See Ghanim, 763 F.3d at 1163 ("An ALJ may consider a range of factors in assessing credibility, including . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . ." (internal quotation marks omitted)).

Second, the ALJ noted the lack of consistency between Plaintiff's subjective symptom testimony and objective clinical evidence in the record. (Dkt. 9-3 at 28-29.) Particularly, the ALJ highlighted that State consultants found that Plaintiff showed some tender points, but did not exhibit joint deformity, erythema, or tenderness, possessed full range of motion in all joints, and had normal sensation and motor functioning. (Id. at 28 (citing 9-10 at 23, 26, 32-33, 110, 116, 156, 192, 201, 206).) The record lacks objective clinical findings reflecting that Plaintiff exhibited "muscle weakness, atrophy, imbalance, [and] loss of range of motion." (Id.) The ALJ also noted inconsistent medical evidence pertaining to Plaintiff's mental status due to no clinical evidence "showing problems with concentration,

speech, or memory." (Id. at 29.)  Despite Plaintiff claiming chronic fatigue syndrome as her primary obstacle to employment, the ALJ highlighted the lack of "consistent findings [in the record] of ataxia, extreme pallor, pronounced weight change, or swollen lymph nodes typically associated with chronic fatigue syndrome." (Id.)

The Court concludes that the ALJ properly discounted Plaintiff's subjective symptom testimony due to a lack of consistent clinical findings in the record. See Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").  The ALJ "acknowledge[d] that each individual has different thresholds with respect to pain symptoms and reactions to mood symptoms," and then properly considered the consistency of Plaintiff's subjective complaints with the objective medical evidence. (Dkt. 9-3 at 29); see Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) ("[A] claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings.").[6]

---

[6] Plaintiff contends that "[t]he ALJ did not provide clear and convincing reasons to reject the frequency of [Plaintiff's] migraines." (Dkt. 11 at 15.)  However, as Plaintiff concedes, (id. at 15), the ALJ did address this issue and explained that "[Plaintiff's] reports about her migraine headaches are also not consistent with the treatment records." (Dkt. 9-3 at 29.)  The ALJ further explained that "[s]he may be receiving more treatment now, but the records do not show how this treatment has progressed or the outcome." (Id.)  The ALJ is correct that earlier treatment notes reflect that Plaintiff often denied headaches until approximately August 2020.  (Dkt. 9-8 at 52, 317; Dkt. 9-9 at 400, 469, 472, 475, 478; Dkt. 9-10 at 160-61).  Plaintiff was eventually prescribed medication, receiving a few occipital blocks, and reported (cont'd . . .)

Third, the ALJ emphasized the inconsistency between Plaintiff's testimony and her activities of daily living.  (Dkt. 9-3 at 29.)  The ALJ specifically noted that despite Plaintiff claiming she cannot get out of bed many days of the week, Plaintiff lives independently, without a caretaker.  (Id.)  Plaintiff previously testified that she attends church and goes to the market.  (Id. at 25.)  In her Function Report, Plaintiff stated that she goes out to lunch and can perform errands on "good days."  (Id.)  Thus, the ALJ determined that Plaintiff's daily activities "indicate a higher level of functioning than alleged."  (Id. at 29.)

The Court concludes that the ALJ properly discounted Plaintiff's subjective symptom testimony due inconsistencies with Plaintiff's activities of daily living.  See Burch, 400 F.3d at 681 ("The ALJ was permitted to consider daily living activities in his credibility analysis."); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (A claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity.").

In sum, as set forth above, the Court concludes that the ALJ provided multiple, specific, clear and convincing reasons supported by evidence in the record to find Plaintiff's subjective symptom testimony only partially credible.  See Rollins, 261 F.3d at 857 ("The ALJ gave clear and convincing reasons for discounting portions of [plaintiff's] excess pain testimony, and those reasons were supported by substantial evidence.").

\\

---

improvement in her pain and headaches, with headaches occurring only 1-2 times a week.  (Dkt. 9-10 at 190, 195, 198).

**VII.**

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner.  The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.


DATED: April 18, 2024                 _____
                                                            HON. A. JOEL RICHLIN
                                                  UNITED STATES MAGISTRATE JUDGE